IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| COREY HUDDLESTON | ) | | |
|---|---|---|---|
| | ) | | |
| v. | ) | NO: | 3:14-1600 |
| | ) | | |
| JEFF BLEDSOE, et al. | ) | | |

TO: Honorable Aleta A. Trauger, District Judge

# R E P O R T   A N D   R E C O M E N D A T I O N

By Order entered August 14, 2014 (Docket Entry No. 3), this action was referred to the Magistrate Judge to enter a scheduling order for management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Presently pending before the Court is the Motion for Summary Judgment (Docket Entry No. 31) filed by Defendants Dickson County, Tennessee, Donnie Young, Amber McCoy, Kenneth Lindsey, and Margaret Wilson, to which the plaintiff has filed a response in opposition (Docket Entry No. 39). Also before the Court is the Defendants' reply (Docket Entry No. 43). For the reasons set out below, the Court recommends that the motion be granted and this action be dismissed.

# I. BACKGROUND

The plaintiff is currently an inmate of the Tennessee Department of Correction ("TDOC") confined at the Northwest Correctional Complex. On August 5, 2014, he filed this action pro se and in forma pauperis seeking damages and injunctive relief under 42 U.S.C. § 1983 for violations of his federal constitutional rights alleged to have occurred during his confinement from May-July, 2014, at the Dickson County Jail ("Jail") in Charlotte, Tennessee. Named as defendants to the action are Dickson County Sheriff Jeff Bledsoe, Captain Donnie Young, Sgt. Amber McCoy, Kenneth Lindsey, and Margaret Wilson. Defendants Bledsoe and Young are named in only their official capacities. The Defendants filed a joint answer (Docket Entry No. 17), and a scheduling order (Docket Entry No. 18) was entered providing for a period of pretrial activity in the action. The plaintiff demands a trial by jury.

The essential facts as gleaned from the record are as follows. Upon the plaintiff's intake into the Jail in May 2014, he was initially placed in housing Cell D-30 while awaiting classification at the Jail. Approximately two days later, he was moved to housing Cell D-80, which is a general housing unit.[1] At some time thereafter,[2] the plaintiff and another inmate named Kelly were moved out of Cell D-80 after three other inmates in the cell voiced some type of complaint to Jail staff about the plaintiff and inmate Kelley being "incompatible" with them. The plaintiff was moved back into

---

[1] Although not clearly explained by either party, Cell D-30 and Cell D-80 are not individual cells that house one or two inmates, but appear to be communal housing areas. See Docket Entry No. 34-1, at 17, lines 20-23..

[2] The Plaintiff states in his Complaint that the incident triggering his claims occurred "on or about 5-8-14." See Docket Entry No. 1, at 5. However, in his deposition he testified that he arrived at the Jail on May 24, 2014. See Docket Entry No. 34-1, at 5, lines 12-14. The Defendants' Statement of Undisputed Material Facts provides no specificity as to any relevant dates. See Docket Entry No. 33.

Cell D-30. During the first day or two in Cell D-30, the plaintiff received a disciplinary report or sanction for throwing a food tray. He was subsequently placed on "lockdown" or segregation and moved to the L pod, where he remained until he was transferred to the Humphreys County Jail sometime in July 2014.[3] During the time period the plaintiff was housed in Cell D-30 and in lockdown, he did not have an inmate job at the Jail and had fewer privileges than were permitted to inmates in Cell D-80.

The plaintiff, who is African-American, alleges that his removal from Cell D-80 and his placement in more restrictive housing at the Jail was the result of racial discrimination against him in violation of his equal protection rights under the Fourteenth Amendment. He contends that the complaints of the three inmates, who are white, were not verified or investigated by the Jail staff and that the three inmates made their complaints as part of a plan to have themselves removed from Cell D-80, but that he and inmate Kelley, who are both black, were the inmates who were removed. He asserts that Defendants Lindsey and Young were directly involved in his removal from Cell D-80 and that Defendants McCoy and Wilson, who are alleged to be a supervisor and the classification and inmate placement official at the Jail, respectively, failed to properly perform their duties and investigate the statements of the three inmates. He alleges that his grievances about the matter and his complaints about racial discrimination were essentially ignored by the Defendants. The plaintiff further alleges that Jail officials maintain a policy and practice of segregating inmates at the Jail by race and affording preferential treatment to white inmates, that different discipline applies to black

---

[3] The plaintiff was subsequently returned to the Jail in October 2014. See Docket Entry No. 42, at ¶¶ 2-3. However, the events at issue in the instant action involve only those events occurring during the May-July, 2014, time period.

and white inmates, and that the Jail does not have a policy against racial discrimination. He contends that Defendant Young was the person responsible for placing him in lockdown at the Jail.

## II. MOTION FOR SUMMARY JUDGMENT AND RESPONSE

The Defendants seek summary judgment contending that there are no genuine issues of material fact in dispute and that they are entitled to judgment as a matter of law. The Defendants argue that the plaintiff cannot set forth evidence showing that the plaintiff's constitutional rights were violated at the Jail. The Defendants support their motion with a Statement of Undisputed Material Facts (Docket Entry No. 33) and with the Plaintiff's Deposition Transcript (Docket Entry No. 34).

In response, the plaintiff contends that the Defendants approved of a custom or policy of segregated housing at the Jail and purposefully discriminated against him because of his race by moving him from his housing pod and placing him in administrative segregation. In support of his response in opposition, the plaintiff relies upon his deposition and his Complaint and upon his Response to the Defendants' Statement of Undisputed Material Fact (Docket Entry No. 42).

## III. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable

jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a

5

well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

## IV. CONCLUSIONS

Initially, there are some matters that are summarily addressed. First, the plaintiff's request for prospective injunctive relief is moot and warrants dismissal because the plaintiff has been transferred to the TDOC and is no longer incarcerated at the Jail. See Colvin v. Caruso, 605 F.3d 282, 289 (6th Cir. 2010); Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996). Second, Defendants Bledsoe and Young have been named as defendants in only their official capacities. See Docket Entry No. 1, at 4. Thus, the claims against them are not individual liability claims but are essentially claims against the entity for which they are agents, i.e., Dickson County, Tennessee. See Docket Entry No. 3, at 3-4. Such claims require evidence supporting municipal liability under the analysis set out in Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The plaintiff must show that a policy of the governmental entity, not merely the action an employee or official of that entity, was the "moving force" behind the violation of the constitutional rights at issue. City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), abrogated in part on other grounds, Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Finally, although the Defendants devote several pages of their supporting Memorandum to arguments against Eighth Amendment conditions of confinement

claims, see Docket Entry No. 32, at 7-9, the Plaintiff alleges only claims that his Fourteenth Amendment rights under the Equal Protection Clause have been violated and does not allege any Eighth Amendment claims. See Docket Entry No. 3, at 4.

The Court also notes that the Defendants have not adequately supported several of the factual assertions they make in their argument. The only evidence the Defendants rely on in support of their motion is the plaintiff's deposition. They have not submitted supporting affidavits or declarations from any of the Defendants or other staff members at the Jail nor have they submitted any other type of documentary evidence regarding the operation of the Jail generally or the specific events at issue in this lawsuit. The plaintiff's deposition testimony simply does not support the Defendants' assertions of the Jail staff's reason for moving the plaintiff out of Cell D-80 to the reclassification pod, the content of policies at the Jail regarding incompatible inmates or the housing of inmates, or the Jail staff's reason for placing the plaintiff on lockdown status after he was moved to the reclassification cell. Although the plaintiff does offer factual testimony regarding these issues, the Defendants' contention that his deposition testimony supports the above noted assertions is an overstatement of the testimony. Indeed, the plaintiff's deposition testimony actually contradicts at least one of the facts the Defendants assert is supported by his testimony.[4]

Nonetheless, after review of the parties' filings and the record in this action, the Court finds that no reasonable jury could view this evidence, even when taken in the light most favorable to the

---

[4] For example, the Defendants contend that the plaintiff's deposition testimony supports the factual assertion that the plaintiff was placed on lockdown and received a loss of privileges as a sanction for throwing and kicking a food tray while in the reclassification pod. See Docket Entry No. 33, at ¶¶ 16-17. Although the plaintiff admits to throwing and kicking the tray and receiving a disciplinary report for these actions, see Docket Entry No. 34-1, at 34, lines 13-16, he specifically denies that he was moved to lockdown because of the incident. Id. at 36, lines 15-18.

7

plaintiff, and find in favor of him on his claims that the Defendants discriminated against him because of his race. Accordingly, summary judgment should be granted to the Defendants.

The plaintiff has not set forth any evidence showing that overt racial classifications were used at the Jail or that any official policy or custom at the Jail includes racial classifications. Therefore, his claims differ significantly from claims in which racial categories or classifications were explicitly used by prison officials in making inmate management decisions. See Johnson v. California, 543 U.S. 499, 125 S. Ct. 1141, 160 L. Ed. 2d 949 (2005); Brand v. Motley, 526 F.3d 921, 924 (6th Cir. 2008). Although the plaintiff alleges in his complaint and testified in his deposition that there were housing cells at the Jail "in the last four or five years" or "for years" that housed only white inmates, see Docket Entry No. 1, at 5; Docket Entry No 34-1, 59-60, he has provided no supporting evidence for this allegation or shown that these events occurred during the time frame at issue in this action. Even viewed favorably, his testimony amounts to only a scintilla of evidence supporting such a claim, which is not sufficient to deny a motion for summary judgment. Bell supra. Further, the plaintiff's own allegations and deposition testimony are that the housing unit he was in prior to being placed in lockdown contained both black and white inmates. See Docket Entry No. 34-1, at 31.

The plaintiff's lawsuit is essentially supported by only his own allegations of a few instances of differing treatment among inmates in routine and day-to-day matters such as housing decisions, disciplinary matters, and inmate jobs. Such allegations simply fail to rise to the level of constitutional concern. The specific manner of an inmate's confinement while in prison and the response of prison officials to issues involving internal prison discipline, housing, and inmate control are generally matters left to the sound discretion of prison officials. See Sandin v. Conner, 515 U.S. 472, 477-78, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); Thornburgh v. Abbott, 490 U.S. 401, 404-08,

8

109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); Bell v. Wolfish, 441 U.S. 520, 546-47, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); Ward v. Dyke, 58 F.3d 271, 274 (6th Cir. 1995). Although the Equal Protection Clause of the Fourteenth Amendment provides a certain measure of limitation on this discretion by prohibiting conduct that discriminates on the basis of membership in a suspect class, see Washington v. Davis, 426 U.S. 229, 239, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), the Equal Protection Clause does not require the exact same treatment of all inmates nor prevent government officials from exercising discretionary authority. Nor do routine prison matters become triable constitutional claims merely upon a disgruntled prisoner's assertion that racial animus motivated prison officials in taking the protested action. It is incumbent upon a prisoner asserting an equal protection claim of racial discrimination to prove the existence of some purposeful discrimination against him based upon his race. McCleskey v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265-66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); Copeland v. Machulis, 57 F.3d 476, 480 (6th Cir. 1995) (per curiam); Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 341 (6th Cir. 1990); Joyce v. Mavromatis, 783 F.2d 56, 57 (6th Cir. 1986).

There is insufficient evidence before the Court upon which a reasonable jury could find that the plaintiff was treated in a manner evidencing racial discrimination against him or from which it could be inferred that racial discrimination played a part in the decision to remove him from the housing pod or to place him on lockdown status for his short period of confinement at the Jail from May to July 2014. The plaintiff's subjective objections to the actions of the Defendants and his

personal belief that they were motivated by racial prejudice is simply insufficient to support an Equal Protection claim. See Habin-Bey v. Rutter, 420 F.3d 571, 575-77 (6th Cir. 2005); Armour v. Gundy, 107 F.3d 870 (6th Cir. 1997); Newell v. Brown, 981 F.2d 880, 887 (6th Cir. 1992); Wilson v. Seiter, 893 F.2d 1336 (6th Cir. 1990); Hardy v. Montgomery Cnty. Jail, 2009 WL 1674824, **5-6 (M.D. Tenn. June 15, 2009). The plaintiff makes no allegations that his treatment was accompanied by racial slurs or epithets or conduct from which a racial animus could be inferred. Although the plaintiff complains that favoritism was shown to white inmates regarding prison jobs, the plaintiff's own testimony was that he was given a prison job when he was initially placed in Cell D-80. See Docket Entry No. 34-1, at 17, lines 17-19. Additionally, the plaintiff's deposition testimony about differing disciplinary treatment of inmates at the Jail is minimal and falls far short of showing or inferring purposeful discrimination against him. Id. at 48, lines 12-17, and 54-55. Furthermore, to the extent that the plaintiff attempts to infer that the Jail had an unwritten policy of moving black inmates based upon unverified complaints by white inmates that the black inmates were "incompatible," the plaintiff's deposition testimony was that he had also lodged an unfounded complaint about another inmate being "incompatible" with him in order to change his housing situation. Id. at 37, lines 20–25. Finally, the Court finds it to be of no significance that the named Defendants or other prison officials allegedly did not offer the plaintiff an explanation for their actions and did not respond in the manner he wished upon his complaints and his grievances. A prison inmate has no constitutional right to be given an explanation by prison officials for routine management decisions, let alone an explanation that the inmate finds satisfactory. See Rodgers v. Johnson, 56 F. App'x 633, 636 (6th Cir. 2002).

At best, the plaintiff has only alleged isolated and minor incidents of differing treatment among a few prison inmates. Such allegations are insufficient to support a claim of unlawful discrimination or to require that this action proceed to trial. See Tate v. Davis, 2013 WL 53761, **2-3 (W.D. Mich. Jan. 3, 2013) (prisoner's conclusory allegations that discriminatory animus was behind his loss of a prison job did not support an equal protection claim); Barnes v. Outlaw, 2006 WL 840418, *6 (W.D.Tenn. Mar. 30, 2006) ("The mere fact that on some occasions a heterosexual or non-black inmate received favorable treatment does not elevate plaintiff's claim into a matter of constitutional concern."); Fletcher v. Chartrand, 1989 WL 14015, *1 (6th Cir. Feb. 22, 1989) (allegations that prison guard selectively enforced disciplinary regulation on racial grounds was insufficient to state a claim for relief). Any factual disputes that exist do not rise to the level of genuine issues of material fact, and summary judgment should be granted to the Defendants on all claims.[5]

## RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS that the Motion for Summary Judgment (Docket Entry No. 31) be GRANTED and this action be DISMISSED WITH PREJUDICE.

---

[5] Although the Court has determined that there is not sufficient evidence to support a conclusion that the plaintiff's race played a factor in any of the events about which he complains and that, therefore, he has not shown a basis upon which a reasonable jury could find that he was the victim of purposeful racial discrimination, the Court rejects the Defendants' contention that the plaintiff's claims do not implicate a suspect classification and that a "rational-basis" test would apply. See Docket Entry No. 32, at 11-14.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge